# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Brandy R.,                                          Case No. 21-CV-0078 (JFD)

        Plaintiff,

v.                                                  **ORDER**

Kilolo Kijakazi,

        Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Brandy R. seeks judicial review of a final decision by the Defendant Commissioner of Social Security denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 21) and Defendant's Motion for Summary Judgment (Dkt. No. 26).

Plaintiff seeks reversal of the Commissioner's final decision and remand to the Social Security Administration ("SSA") on three grounds: (1) the Administrative Law Judge ("ALJ") did not properly weigh evidence concerning Plaintiff's personal care attendant ("PCA"); (2) the ALJ did not adequately address the frequency of Plaintiff's migraine headaches and non-epileptic spells; and (3) the ALJ did not correctly evaluate the opinion of Plaintiff's therapist, Mark Sherman, LICSW. For the reasons set forth below, the Court denies Plaintiff's summary-judgment motion, grants Defendant's summary-judgment motion, and affirms the Commissioner's final decision.

1

## I.      Background

Plaintiff applied for DIB on August 29, 2017, and SSI on September 5, 2017. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 10.)[1] She claimed disability beginning on January 21, 2016. (R. 10, 44.) Plaintiff's allegedly disabling conditions were chronic migraine; petit mal seizure activity; bilateral hand dysfunction due to neuropathy, carpal tunnel, trigger finger problems, and thrombosis in the right arm; bipolar disorder; depression; anxiety; post-traumatic stress disorder ("PTSD"); and borderline personality disorder. (*See* R. 51.)

Plaintiff's applications were denied on initial review and reconsideration. An ALJ held a hearing at Plaintiff's request on November 7, 2019. (R. 39.) At the beginning of the hearing, Plaintiff's attorney informed the ALJ of additional evidence from a company that provides PCA services to Plaintiff, Quality Home Services. (R. 45.) The ALJ instructed Plaintiff's counsel to make a written showing of good cause why the PCA records were not included in the "five-day letter"[2] required by 20 C.F.R. §§ 404.935(a) and 416.1435(a), and if Plaintiff's counsel showed good cause, the ALJ would consider receiving the records late (R. 48–49). There is no record that counsel complied with this directive. Plaintiff's attorney also told the ALJ during the hearing that "the PCA just does cleaning" and

---

[1] The Social Security administrative record is filed at Dkt. Nos. 19 through 19-26. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

[2] A claimant "must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. §§ 404.935(a), 416.1435(a).

"certainly does not do interactions with my client in the way that the ARMHS [Adult Rehabilitative Mental Health Services worker] does." (R. 47, 48.)

At the hearing, Plaintiff testified that her hands hurt all the time, and she drops things constantly. (R. 54.) Three of her fingers are "dead weight." (R. 54.) These symptoms began in 2016, when Plaintiff was in a coma due to sepsis. She had an operation in which a tendon was removed from her right arm, and an incision was patched with a vein. (R. 54–55.) She also has neuropathy in her hands, which causes inflammation and needle-like pain. (R. 55.) Her carpal tunnel syndrome causes pain in the palm of her hand, wrist, and elbow. (R. 56.) Surgery helped somewhat, but not with the ability to move her fingers and to grip. (R. 56.) Plaintiff further testified that she has migraine headaches twice a week that last for two or three days, and tension headaches almost every day. (R. 60–61.) Plaintiff also has non-epileptic spells, like a "blank stare," every day and has "woken up on the floor more times than one." (R. 62.)

As for Plaintiff's mental impairments, she testified that she has PTSD that is triggered by loud noises and crowds, as well as anxiety, panic attacks, depression, and attention deficient disorder. (R. 63–66.) Plaintiff goes to therapy weekly. She also receives services from a Certified Family Peer Support Specialist, "Ryan"; a mental health case manager, "Sandy"; and a PCA, "Kimberly." (R. 65–66, 69.)[3] Sandy helps Plaintiff schedule transportation to and from appointments, and Kimberly comes to Plaintiff's house 38 hours a week and does tasks such as dishwashing, meal prep, housecleaning, and laundry. (R.

---

[3] These individuals are referred to only by their first name for the sake of their privacy.

66–67.) Kimberly also reminds Plaintiff to take her medications. (R. 80.) Ryan accompanies Plaintiff out into the community, provides peer support, and helps support the entire family. (R. 67, 71, 76, 82.)

Ryan also testified at the hearing. He has worked with Plaintiff since March 7, 2017. (R. 82.) He spends approximately 15 hours a week with her. (R. 82.) He has noticed that Plaintiff has very limited use of her hands and frequently drops things. (R. 83.) Ryan has also noticed that Plaintiff has headaches two to three times a week. (R. 83.) He witnessed Plaintiff have one grand mal seizure and several "blank stare" spells. (R. 84–86.) Ryan takes Plaintiff and her two children to all of their appointments, the grocery store, and school activities. (R. 86–87, 89.) Ryan confirmed that the PCA does tasks like laundry, dishes, sweeping, mopping, and dusting. (R. 84.)

After this testimony, the ALJ asked vocational expert Douglas Prutting to consider a hypothetical person of Plaintiff's age, with the same education and work experience, and with the following limitations: "The person could perform work at the light level, may be limited to occasional stooping, kneeling, crawling, crouching, and climbing; climbing ramps and stairs only; no ladders, ropes or scaffolds"; "limited to frequent reaching, handling, and fingering with the right upper extremity, the dominant arm;" no driving motorized vehicles or equipment; no hazards such as heights or moving machinery; able to understand and remember simple instructions; "can sustain attention, consistent effort and pace for simple, routine, and repetitive tasks that involve only simple, work-relate decisions with few, if any, workplaces changes from day-to-day"; "can have occasional interaction with coworkers, and no interaction with the general public"; "could tolerate ordinary work

4

pressures, but they would need to avoid a fast-paced work environment or high-volume production quotas, quick decision-making, rapid changes in work tasks." (R. 91.)  Mr. Prutting testified that the hypothetical person could not perform any of Plaintiff's past work. (R. 91.) However, the person could work as an office clerk, mail clerk, and photocopy machine operator. (R. 91–92.) If the person were further limited to occasional handling and fingering with the right dominant hand, however, the hypothetical person could not perform those jobs. (R. 92.) And if the person were off-task 15% of the workday, or absent more than once a month, the hypothetical person could not perform those jobs. (R. 92, 94.)

The ALJ issued a written decision on December 19, 2019, determining that Plaintiff was not disabled. (R. 7–32.) The ALJ noted at the beginning of the decision that Plaintiff had missed the deadline to submit additional written evidence about her PCA and that Plaintiff's ARMHS worker had provided longer and more in-depth services than the PCA. Thus, the ALJ found no good cause to hold the record open for additional evidence about the PCA. (R. 10–11.)

Proceeding to the five-step sequential analysis outlined in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 26, 2016. (R. 13.) At the second step, the ALJ found that Plaintiff had the following severe impairments: seizure disorder, migraine headaches, bilateral carpal tunnel syndrome, bilateral middle finger trigger finger, bilateral palmar fibromatosis without contracture, bilateral cubital tunnel syndrome, chronic hepatitis C, diabetes mellitus type II with

diabetic neuropathy, cirrhosis, right brachial artery thrombosis, toe fracture, mild disc desiccation and facet arthropathy of the lumbar spine, mild degenerative changes of the bilateral hips, mild degenerative changes of the right hand and wrist, onychogryphosis, fibromyalgia, bipolar disorder, PTSD, generalized anxiety disorder, attention deficit hyperactivity disorder, borderline personality disorder, major depressive disorder, tobacco use disorder, and methamphetamine dependence in remission. (R. 13.) At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 14.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC")[4] as:

> a range of light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b), such that she is limited to occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs only; cannot climb ladders, ropes, or scaffolds; would be limited to frequent reaching, handling, and fingering with the right upper extremity (the dominant arm); could not drive any motorized vehicles or equipment; would need to avoid hazards such as heights and moving machinery; can understand and remember simple instructions; can sustain attention, consistent effort, and pace for simple, routine, and repetitive tasks that involve only simple work-related decisions, with few if any, workplace changes from day to day; can have occasional interaction with co-workers; can have no interaction with the general public; and can tolerate ordinary work pressures, but would need to avoid a fast-paced work environment or high volume production quotas, quick decision making, and rapid changes in work tasks.

---

[4] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(R. 18.) With this RFC, the ALJ concluded, Plaintiff could not perform her past relevant work. (R. 30.) Thus, the ALJ proceeded to step five, where the ALJ determined that Plaintiff could make a successful adjustment to other work existing in significant numbers in the national economy such as office clerk, mail clerk, and photocopy machine operator. (R. 31.) Consequently, Plaintiff was not disabled. (R. 32.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent

positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB and SSI, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

Plaintiff was last insured for DIB purposes on December 31, 2016. (R. 334.) A DIB "applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). Thus, the relevant period for Plaintiff's DIB claim is from January 21, 2016 (the alleged disability onset date) to December 31, 2016 (the expiration of insured status). SSI benefits are not payable before an application is filed, 20 C.F.R. § 416.335, and thus, the relevant time frame for Plaintiff's SSI claim is from September 5, 2017 (the date of the SSI application) to December 19, 2019 (the date of the ALJ's decision). *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (using SSI application date to mark the beginning of the time period at issue); *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) (using the date of the ALJ's decision on the SSI claim to mark the end of the relevant time period).

### III.    Discussion

#### A.    Evidence in the Record Regarding the PCA

Plaintiff argues that the ALJ did not properly evaluate the record evidence regarding the PCA. (Pl.'s Mem. Supp. Mot. Summ. J. at 21, Dkt. No. 22.) Plaintiff acknowledges that the ALJ did not receive the actual PCA records into evidence because Plaintiff's counsel did not comply with 20 C.F.R. §§ 404.935 and 416.1435, and Plaintiff does not argue that the ALJ erred by not receiving the records. (*See* Pl.'s Mem. at 21–22.) Rather, Plaintiff argues that the ALJ erred in considering *other* evidence in the record about the PCA. (Pl.'s Mem. at 21.)

Plaintiff first points out that she and Ryan testified at the hearing that a PCA works in her home about 35 hours a week and helps with bathing, household chores, food preparation, and other cleaning. (*Id.* (citing R. 66, 84).) Contrary to Plaintiff's argument, the ALJ did acknowledge this testimony. At step three of the analysis, the ALJ summarized Plaintiff's testimony almost verbatim, noting that the PCA helped Plaintiff for 38 hours a week around the house and with "tasks such as dishes, meal prep, sweeping, mopping, and helping her clean her bathroom." (R. 17.) Ryan's testimony is cumulative of Plaintiff's testimony.

The ALJ referred to Plaintiff's testimony again in the RFC assessment. (R. 20.) Although the ALJ did not repeat the substance of the testimony, a reasonable assumption is that the ALJ remembered what she had written three pages earlier, in the step-three discussion. The ALJ did not comment adversely about Plaintiff's testimony or otherwise indicate it was not accepted. Rather, the ALJ added to the discussion Plaintiff's statements

to Mr. Sherman (Plaintiff's therapist) that she could not clean (R. 24) and needed help with tasks such as cleaning and organizing (R. 25). The ALJ also acknowledged that Plaintiff received extensive services from the State, including a PCA. (R. 27.)

Plaintiff also identifies several pages in the record that mention or authorize payment for PCA services. (Pl.'s Mem. at 21–22 (citing R. 1183–1243, 2412, 2468, 2568– 2569).) The ALJ cited to the latter group of treatment records several times throughout the decision, thus indicating the ALJ considered them in assessing both the severity of Plaintiff's impairments and her functioning. (*E.g.*, R. at 15, 16, 17, 26, 27 (citing "Exhibit B16F," which contains pages 2412, 2468, and 2568–2569).) Even so, those pages only mention that Plaintiff was working with a PCA; they do not link the PCA to any level of functioning.

As to the former span of treatment records (R. 1183–1243), which are from the Minnesota Department of Human Services, the vast majority of those records show the amount billed and paid for the PCA services. They do not document any measured or observed level of functioning. There is one record that contains a "summary of needs" and includes notations that Plaintiff needs assistance with cutting and arranging food, bathing, dressing, personal hygiene and grooming, toilet use, walking, transportation, housework, and shopping. (R. 1190–93.) It is not clear where that information originated, however, whether from Plaintiff herself, the PCA, or some other source. Moreover, the ALJ considered similar evidence in the form of testimony from Plaintiff and Ryan, questionnaires and function reports completed by Plaintiff, evidence from Plaintiff's providers, and reports from Plaintiff's ARMHS worker. (R. 19–30.) An ALJ is not required

to cite every piece of evidence, *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998), especially cumulative evidence, *see Whitman v. Colvin*, 762 F.3d 701, 709 (8th Cir. 2014).

The Court concludes that the ALJ properly considered evidence in the record about the PCA.

### B.   The Frequency of Migraines and Non-Epileptic Spells

Plaintiff next argues that the ALJ did not properly address the frequency of her migraine headaches and non-epileptic spells. (Pl.'s Mem. at 22.) She submits that the record shows she has multiple migraines a month, that her ARMHS worker has observed the non-epileptic spells, and that the headaches and spells would cause excessive absenteeism from the workplace. (*Id.*) Plaintiff cites to numerous pages in the record as support. (*Id.* (citing 1629, 1963–70, 1577, 1551–53, 1529, 2141–42, 2145–46).) Plaintiff also contends that the ALJ did not follow Social Security Ruling ("SSR") 19-4p. (*Id.*)

Plaintiff's citation to evidence in the record that documents the severity and intensity of her migraines and non-epileptic spells is a request for the Court to re-weigh the evidence. The Court's duty, however, "is not to reweigh the evidence, but to ensure that the Commissioner's decision is supported by substantial evidence in the record." *Johnson v. Astrue*, 627 F.3d 316, 319 (8th Cir. 2010). Here, the ALJ discussed Plaintiff's migraines and non-epileptic spells and cited to substantial evidence in the record to support her findings and conclusions. (R. 19, 20, 21, 22, 26, 27, 29.) For example, Plaintiff often reported no headaches or spells during routine appointments. (*E.g.*, R. 1437, 1447, 1505, 1512, 1619.) In February 2016, Plaintiff's doctor remarked that her migraines were better controlled once she began taking a higher dosage of gabapentin. (R. 1963.) At a neurology

consultation in September 2019, Plaintiff said her last two spells had occurred in March 2018 and April 2019, many months apart. (R. 1403.) Substantial evidence supports the ALJ's findings and conclusions concerning the frequency of Plaintiff's migraines and non-epileptic spells.

Furthermore, the ALJ adequately explained why Plaintiff's subjective statements about the frequency and intensity of her migraines and non-epileptic spells were inconsistent with some medical evidence and other evidence of record, including physical examinations, imaging results, the effectiveness of medication and other treatments, and Plaintiff's daily activities. (R. 18–27.) Although Plaintiff did not challenge the ALJ's consideration of her subjective statements and has therefore waived that argument, the Court observes that the ALJ considered the relevant factors in evaluating Plaintiff's statements about the intensity, frequency, and limiting effects of migraines and non-epileptic spells. *See* SSR 16-3p, 2016 WL 1119029, at *3 (S.S.A. Mar. 16, 2016).

Next, Plaintiff states that the ALJ violated SSR 19-4p but does not explain how. Plaintiff's argument consists of half a sentence: "The ALJ's hearing decision does not . . . weigh the effects of [Plaintiff's] migraines consistent with Social Security Ruling (SSR) 19-4p." (Pl.'s Mem. at 22.) Plaintiff "provides no analysis of the relevant law or facts" regarding SSR 19-4, and the Court therefore rejects her merely conclusory assertion. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). Alternatively, the Court finds that the ALJ considered Plaintiff's migraines in accordance with SSR 19-4p, which requires an ALJ, at the RFC assessment step, to "consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC." SSR 19-

4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). As discussed above, the ALJ did so here.

Finally, as to Plaintiff's claim that her headaches and non-epileptic spells would cause excessive absenteeism from work, Plaintiff relies on the RFC assessments and opinions of Mr. Sherman. As discussed below, the ALJ did not err in finding Mr. Sherman's opinions unpersuasive. Moreover, Mr. Sherman's opinions were limited to Plaintiff's mental impairments; he did not attribute absenteeism to migraines or non-epileptic spells. Plaintiff has not identified evidence in the record that she would frequently miss work due to migraines or non-epileptic spells.

## C.    The ALJ's Evaluation of Mr. Sherman's Opinion

Plaintiff argues that the ALJ did not properly evaluate the opinions of Plaintiff's therapist, Mr. Sherman. (Pl.'s Mem. at 23.) Mr. Sherman completed mental health RFC questionnaires on November 8, 2018 and October 22, 2019. (R. 1177–82, 3070–75.) Mr. Sherman opined that Plaintiff was markedly[5] impaired in three out of four areas of mental functioning, had suffered from a serious and persistent mental illness for more than two years, and would be absent from work more than four days a month. (R. 1178, 1182, 3071, 3075.) The ALJ considered Mr. Sherman's opinions and found them unpersuasive because (1) the severe degree of limitation opined by Mr. Sherman was not consistent with or

---

[5] "A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis." (R. 1178.)

supported by the evidence of record; (2) Mr. Sherman was "not a medically acceptable source"; and (3) the prior administrative findings of a state agency psychological consultant, Ray M. Conroe, Ph.D., were more persuasive. (R. 30.)

Under 20 C.F.R. §§ 404.1520c and 416.920c, medical opinions are evaluated for their "persuasiveness" according to five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to the supportability and consistency factors, the ALJ referred in the written decision to evidence summarized earlier in the decision in a discussion of prior administrative findings. (R. 29–30.) That evidence included mental status examinations that showed, on one hand, an anxious and sad mood, fidgety and restless behavior, a serious and agitated appearance, rapid and intense speech, and worried and disorganized thoughts. (R. 29.) On the other hand, the evidence also showed mild to moderate inattentiveness, mild to moderate impulsivity, mild to moderate distractibility, appropriate grooming and hygiene, normal activity level, friendly and cooperative behavior, happy and appropriate mood, bright and consistent affect, normal speech, good comprehension, intake memory, normal and linear thoughts, and fair to adequate judgment and insight. (R. 29.) The ALJ identified physical treatment records that included similar findings and observations by Plaintiff's providers. (R. 29.) Although Plaintiff has cited other evidence of record that could be considered consistent with and supportive of Mr. Sherman's opinion, the ALJ's determination is supported by substantial evidence of record, as well. In that circumstance, the ALJ's determination must be affirmed.

Plaintiff does not challenge the ALJ's findings that Mr. Sherman was "not a medically acceptable source" or that the prior administrative findings of Dr. Conroe were more persuasive than the opinion of Mr. Sherman. Thus, the Court does not address those findings, other than to note that the term "medically acceptable source" is no longer used in connection with the evaluation of opinion evidence.[6] *See* 20 C.F.R. §§ 404.1520c, 416.920c. Any error was harmless, however, because the ALJ properly reduced the persuasive value of Mr. Sherman's opinion based on the factors of supportability and consistency.

## IV.    Conclusion

Based on all of the files, records, and proceedings herein,   **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment (Dkt. No. 21) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (Dkt. No. 26) is **GRANTED**.

---

[6] Before the Social Security regulations were extensively revised in 2017, the distinction between an acceptable medical source and a mere medical source applied in more situations than it does now. As the Eighth Circuit held in a pre-2017 opinion, "[a]ccording to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources." *Sloan v. Astrue*, 499 F. 3d 883 (8th Cir. 2007) (citations in original omitted). The distinction now survives only when evaluating whether a claimant has a medically determinable impairment at step two. Only "objective medical evidence," that must come from an acceptable medical source, may be considered when that determination is being made. 20 C.F.R. §§ 404.1521, 416.921.

3.      The decision of the Commissioner of Social Security is **AFFIRMED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Date:  July 29, 2022                              *s/  John F. Docherty*
                                                  JOHN F. DOCHERTY
                                                  United States Magistrate Judge